# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00377-CV

**Continental Imports, Inc., d/b/a Mercedes-Benz of Austin, Appellant**

**v.**

**Mercedes-Benz USA, LLC; Board of the Texas Department of Motor Vehicles, Whitney Brewster, in her official capacity as Executive Director of the Texas Department of Motor Vehicles; and Swickard Austin, LLC d/b/a Mercedes-Benz of South Austin, Appellees**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003294, THE HONORABLE LORA LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Continental Imports, Inc. d/b/a Mercedes-Benz of Austin (Continental Imports) appeals from a final order issued by the Board of the Texas Department of Motor Vehicles denying Continental Imports's protest of Swickard Austin, LLC d/b/a Mercedes-Benz of South Austin's application to establish a new Mercedes-Benz dealership in Austin, Texas. On appeal, Continental Imports complains that (1) the final order was not supported by substantial evidence, (2) in making its decision the Board departed from agency precedent without explanation, and (3) the Board failed to state the reasons for its determination to deny the protest. Because we conclude that the Board's order is supported by substantial evidence and that the Board did not act in an arbitrary or capricious manner or abuse its discretion, we will affirm the final order.

## BACKGROUND

Swickard Austin filed an application with the Motor Vehicle Division of the Texas Department of Motor Vehicles to establish a new Mercedes-Benz dealership in Austin. Continental Imports, which owns an existing Mercedes-Benz dealership in Austin initiated this proceeding to protest Swickard Austin's application.[1] Mercedes-Benz USA, LLC (MB USA), the Mercedes-Benz national distributor, intervened in the proceeding on Swickard's behalf. The Division referred the case to the State Office of Administrative Hearings (SOAH) for a contested case hearing before an Administrative Law Judge (ALJ) to determine whether there was good cause to establish a new Mercedes-Benz dealership in Austin. *See* Tex. Occ. Code § 2301.652(a) ("The board may deny an application for a license to establish a dealership if, following a protest, the applicant fails to establish good cause for establishing the dealership."). SOAH conducted an eight-day hearing before two ALJs who heard evidence from all parties. After the close of the hearing, the ALJs issued a proposal for decision (PFD) finding that Swickard Austin had demonstrated good cause for the addition of a new Mercedes-Benz dealership in Austin and recommending that the Board approve Swickard Austin's application. Continental Imports excepted to most of the ALJs' determinations in the PFD. MB USA filed a reply to the exceptions, which Swickard Austin joined. MB USA filed no exceptions to the PFD but recommended four revisions. After reviewing the exceptions and requested revisions, the ALJs recommended making minor changes to two Findings of Fact and two additional minor

---

[1] A car dealer may protest an application to establish a dealership if the person filing the protest is a franchised dealer of the same line-make whose dealership is located in the county in which the proposed dealership is to be located or within a 15-mile radius of the proposed dealership. *See* Tex. Occ. Code § 2301.652(b). There is no dispute that Continental Imports satisfied this statutory requirement and, therefore, had standing to protest Swickard Austin's application.

changes to the PFD to correct misstatements. Because the ALJs determined that the remaining exceptions filed by Continental Imports constituted disagreements with the PFD's evaluation of the evidentiary record, they recommended no further changes to the PFD or its Findings of Fact and Conclusions of Law. After considering the administrative record, the Board issued an order adopting the Findings of Fact and Conclusions of Law, including the minor changes to the Findings of Fact recommended by the ALJs. The Board adopted the ALJs' determination that Swickard Austin met its burden of demonstrating good cause to establish a new Mercedes-Benz dealership in Austin. Continental Imports then sought judicial review of the Board's final order in district court, and Swickard Austin removed the suit to this Court pursuant to section 2301.751(b) of the Texas Occupations Code. *See id.* § 2301.751(b)

## DISCUSSION

The single relevant issue in a protest proceeding is "good cause." *Id.* § 2301.652(a); *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 306 (Tex. App.—Austin 1999, pet. denied). The burden of proving good cause to establish a new dealership is on the applicant—in this case Swickard Austin. *See* Tex. Occ. Code § 2301.652(a). In determining whether good cause exists, the statute requires the Board to consider seven factors: (1) whether the manufacturer or distributor of the same line-make of a new motor vehicle is being adequately represented as to sales and service; (2) whether the protesting franchise dealer representing the same line-make of the new motor vehicle is in substantial compliance with the dealer's franchise, to the extent that the franchise is not in conflict with the statute; (3) the desirability of a competitive marketplace; (4) any harm to the protesting franchised dealer; (5) the public interest; (6) any harm to the applicant; and (7) current and

3

reasonably foreseeable projections of economic conditions, financial expectations, and the market for new motor vehicles in the relevant market area. *Id.* Although the Board must consider all the factors, the statute does not place any emphasis on one factor over another. *Id.*; *see Grubbs Nissan Mid-Cities, Ltd. v. Nissan N. Am., Inc.*, No. 03-06-00357-CV, 2007 WL 1518115, at *4 (Tex. App.—Austin May 23, 2007, pet. denied) (mem. op.). Because the legislature has given the Board exclusive jurisdiction to determine the issue of good cause, the question of how best to resolve the issue, including the weight to be given each statutory factor, is a matter committed to the Board's discretion. *Austin Chevrolet, Inc. v. Motor Vehicle Bd.*, 212 S.W.3d 425, 432 (Tex. App.—Austin 2006, pet. denied). This Court has previously recognized that we may not substitute our judgment for that of the Board on the weight to be given each of the required statutory factors. *See Meier Infinity Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 100 (Tex. App.—Austin 1996, writ denied).

We review the Board's final order and its good cause determination under the substantial evidence rule. *See* Tex. Occ. Code § 2301.751(a); Tex. Gov't Code § 2001.174(a)(2) ("A party to a proceeding affected by a final order, rule, or decision or other final action of the board with respect to a matter arising under this chapter . . . may seek judicial review of the action under the substantial evidence rule . . . in the court of appeals for the Third Court of Appeals District."); *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd.*, 156 S.W.3d 91, 98 (Tex. App.—Austin 2004, pet. denied) (applying substantial evidence review in cases removed from district court). This standard requires that we reverse or remand a case for further proceedings in the following circumstances:

> [I]f substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

4

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2). The standards for a substantial evidence review are well established:

> Under the substantial evidence rule we review the evidence as a whole to determine if it is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. The issue before us is not whether the agency reached the correct conclusion but whether there is some basis in the record for its action. Although substantial evidence is more than a mere scintilla, the evidence in the record may actually preponderate against the agency's decision and nonetheless amount to substantial evidence. We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the appellant. Finally, the agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced the party's substantial rights.

*Citizens Against Landfill Location v. Texas Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied) (citations omitted); *see also North E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020) ("Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it."). "The question whether an agency's determination meets [the substantial-evidence standard] is one of law." *Texas Comm'n on Envtl. Quality v.*

5

*Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022) (quoting *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000)).

There are also narrow circumstances in which an agency decision can be reversed as "arbitrary and capricious" even though it is supported by substantial evidence. *See* Tex. Gov't Code § 2001.174(2)(F); *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 454 (Tex. 1984) ("In enacting the APTRA, it is clear that the legislature intended to distinguish between agency action that is not supported by substantial evidence and agency action that is arbitrary and capricious."). This Court has held, however, that "the finding of an act, which is supported by substantial evidence, to be arbitrary and capricious must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience." *Santulli v. Texas Bd. of Law Exam'rs*, No. 03-06-00392-CV, 2009 WL 961568, at *4 n.5 (Tex. App.—Austin Apr. 10, 2009, pet. denied) (mem. op.) (quoting *Texas State Bd. of Dental Exam'rs v. Silagi*, 766 S.W.2d 280, 285 (Tex. App.—El Paso 1989, writ denied)).

The Board's order granting Swickard Austin's application determined in Conclusion of Law 15 that Swickard Austin met its burden of demonstrating good cause for the establishment of a Mercedes-Benz dealership in South Austin. In Conclusions of Law 8 through 14, the Board addressed each of the seven "good cause" factors in Texas Occupations Code section 2301.652(a) and determined that:

> 8. The [Mercedes-Benz] product lines are not being adequately represented as to sales and service in the Austin [area of responsibility]. Tex. Occ. Code § 2301.652(a)(1).
>
> 9. [Continental Imports] is in substantial compliance with its dealer franchising agreements. Tex. Occ. Code § 2301.653(a)(2).

6

10. A new [Mercedes-Benz] dealership in South Austin will promote healthy inter-brand and intra-brand competition in the relevant markets. Tex. Occ. Code § 2301.652(a)(3).

11. Establishing a new [Mercedes-Benz] dealership in South Austin will not cause [Continental Imports] to suffer significant harm. Tex. Occ. Code § 2301.652(a)(4).

12. Establishing a new [Mercedes-Benz] dealership in South Austin is in the public interest. Tex. Occ. Code § 2301.652(a)(5).

13. The evidence failed to establish that [Swickard Austin] will be harmed if the Application is denied. Tex. Occ. Code § 2301.652(a)(6).

14. Current and reasonably foreseeable projections of economic conditions, financial expectations, and the market for new motor vehicles in the relevant market area favor the establishment of a new [Mercedes-Benz] dealership in South Austin. Tex. Occ. Code § 2301.652(a)(7).

Following issuance of the Board's order, Continental Imports filed suit for judicial review in Travis County District Court, and Swickard Austin removed the suit to this Court pursuant to Texas Occupations Code section 2301.751. *See* Tex. Occ. Code § 2301.751(b).

Continental Imports raises three general complaints about the Board's order. Continental Imports asserts that the Board's determinations regarding the statutory factors for establishing good cause were not supported by substantial evidence, that the Board failed to follow agency precedent, and that the Board's order fails to comply with section 2301.711(b)(3) of the Texas Occupations Code because it does not provide "the reasons for the particular actions taken." We address each of these complaints in turn.

***Substantial Evidence***

We first consider whether there is substantial evidence in the record to support the Board's determinations on each of the seven statutory factors it must consider in determining whether good cause exists to establish a new Mercedes-Benz dealership in Austin.

7

*1. Adequacy of Representation*

MB USA presented evidence that nationwide, Mercedes-Benz sales exceed those of its primary competitors (BMW, Lexus, and Audi) but in the Austin AOI[2] Mercedes Benz vehicle registration has lagged behind its competitors. Moreover, in the Austin AOI, Mercedes-Benz has underperformed compared to its competitors in terms of sales volume and registration effectiveness since 2012, ranking lowest of market dealers in registration effectiveness. Mercedes-Benz fell further behind as a brand in the Austin AOI after BMW opened a South Austin dealership in 2018, registering 330 vehicles compared to 925 by BMW, 912 by Lexus, and 665 by Audi. MB USA's expert testified that, based on the national registration benchmark, expected Mercedes-Benz vehicle registrations in the Austin AOR[3] in 2016 was 2,006, but there were only 1,581 registrations for a shortfall of 425. Mercedes-Benz's registration effectiveness in the Austin AOR was 78.8 percent, with 100 percent representing an "average" registration effectiveness. Additionally, the proposed South Austin AOI was the fourth worst in registration effectiveness under the national standard and the third worst under the Texas standard. MB USA's expert testified that the Austin market consistently performs below average, whether applying the national or Texas average. MB USA disputed Continental Imports's argument that it is unable to capture more registrations due to lack of supply of certain vehicles because that lack of supply would affect dealers nationwide and would not explain why Continental Imports falls below national benchmarks. The ALJs found that the evidence established that Mercedes-Benz was not adequately represented in terms of vehicle sales in the Austin AOI and AOR and

[2] "AOI" is an initialism for "Area of Influence," which is a geographic area defined by a collection of contiguous ZIP codes around the location of a given dealer.

[3] "AOR" is an initialism for "Area of Responsibility," which is a collection of AOIs that are connected economically by things like retail shopping and commuting patterns.

that it is being outsold by its competitors in Austin. The ALJs found that Mercedes-Benz lags further behind its competitors in Austin than it does in Texas and nationally and that Continental Imports's assertion that this lag is due to supply issues was not compelling.

With regard to whether Mercedes-Benz is adequately represented in terms of service, Continental Imports presented evidence that it is capturing all the realistically achievable service opportunities in the Austin AOI. Continental Imports asserted that it has achieved higher Service Opportunity Index scores than the national, regional, and area benchmarks. Continental Imports provided testimony that it is building a new parking garage and additional service bays that will expand its service department and help it continue to adequately represent Mercedes-Benz in terms of service in the future. MB USA countered this evidence by providing evidence that as of December 2018, 12,400 Mercedes-Benz vehicles were registered in the Austin AOI and 4,615 of those vehicles had not been serviced by a Mercedes-Benz dealer within the past 13 months. According to MB USA, this constituted lost service value of almost $5.7 million. Of the 7,900 vehicles that were serviced, 43 percent were serviced by Continental Imports and 20 percent by other Mercedes-Benz dealers. MB USA presented evidence that Continental Imports's service department is at full capacity and its customers experience longer than average wait times for service other than oil changes. MB USA witnesses testified that these problems will not be solved by adding service bays because the issue is Continental Imports's inability to retain service technicians. MB USA also disputed Continental Imports's testimony that younger vehicle owners prefer taking their vehicles to be serviced at independent providers, asserting that the evidence instead indicates that younger owners are going to independent service providers because they are not able to get timely service from the dealers. Based on the evidence presented, the ALJs found that, although Continental Imports performs better in terms of service

than sales, Mercedes-Benz is not being adequately represented on service in the Austin AOI. The ALJs found that a significant number of Mercedes-Benz vehicles are being serviced by independent providers, leaving millions of dollars in service lost to Mercedes-Benz. The ALJs found that although the construction of additional service bays may help alleviate the service wait times and potentially increase the number of vehicles Continental Imports can service, there was no evidence presented to suggest that the impact would be large enough to significantly reduce the lost service opportunity.

The ALJs stated that, taking into account the evidence regarding growth of the Austin market in terms of population and high-income households and evidence that Continental Imports has below-average sales effectiveness, the preponderance of the evidence shows that Continental Austin is not adequately representing the Mercedes-Benz brand in terms of sales. Additionally, the ALJs stated that the evidence presented shows that the Austin market has ample service opportunity to support an additional dealership, and that significant service opportunity is being lost. The ALJs concluded that the evidence presented regarding the adequacy of representation factor demonstrated that the Mercedes-Benz product lines were not being adequately represented as to sales or service in the Austin AOR.

## 2. *Substantial Compliance with Dealer's Franchise*

MB USA argued that Continental Imports was not in compliance with its franchise agreement because it did not achieve 100 percent sales effectiveness, which it maintains constituted a substantial and material breach that significantly impaired the purpose of the franchise requirement. There was evidence that Continental Imports achieved 61.6 percent sales effectiveness in 2014, 71.1 percent sales effectiveness in 2017, and 62.8 percent sales

10

effectiveness in 2018. As of September 2019, Continental Imports had sales effectiveness of approximately 75 percent. Continental Imports provided testimony that MB USA recently renewed its franchise agreement and approved its parent company's purchase of another dealership. Moreover, MB USA had not sent any franchise noncompliance or cure notices concerning any sales performance contractual obligations.

The ALJs rejected MB USA's assertion that failure to achieve 100 percent sales effectiveness demonstrated a failure by Continental Imports to comply with the franchise agreement. The ALJs noted that the franchise agreement was not introduced into evidence and there was no support for MB USA's assertion that the franchise agreement required that Continental Imports achieve 100 percent sales effectiveness. The authority MB USA relied on was an easily distinguishable case in which the franchise agreement was introduced into evidence and the parties did not dispute that the franchisee was required to meet 100 percent of its minimum sales requirement. The ALJs found that MB USA failed to meet its burden of demonstrating Continental Imports's non-compliance with its franchise agreement and, consequently concluded that Continental Imports was in compliance with its dealer franchise agreement.

### 3. Desirability of a Competitive Marketplace

With regard to this statutory factor, the parties agreed that the establishment of a new dealership increases price competition both within and between brands. Continental Imports, however, argued that a new dealership would not result in lower prices for consumers because it already faces price competition from other luxury brand dealerships. Continental Imports also asserted that MB USA failed to prove that there is enough realistically available lost

11

opportunity in the marketplace to support the new dealership without harming Continental Imports and, consequently, competition will not increase in a "healthy way." Continental Imports argued that Swickard Austin should have been required to submit a dealer application, including a business plan, a balance sheet, a "breakeven" analysis,[4] and other financial projections in order to show that the proposed dealership would further healthy competition. Continental Imports maintained that without reliable proof of the proposed dealership's estimated revenues and expenses, Swickard Austin could not show that it would be generating profit to sustain itself rather than relying on Continental Imports to "subsidize" the new dealership until some future time when the Austin market has grown enough to support three dealerships. Continental Imports based this argument on its determination that, because Swickard Austin proposed to sell primarily entry-level A- and C-class vehicles, it will be selling most of its new vehicles at a loss.

MB USA countered that there was no evidence that Swickard Austin would sell its vehicles at a loss and pointed to evidence of Swickard Austin's success in creating profitable and successful dealerships in other geographic locations. MB USA also relied on the evidence of lost opportunity in the market in arguing that the market would support a new dealership without the need for the existing dealership to "subsidize" it.

The ALJs rejected Continental Imports premise that the current Austin market cannot support three dealerships. There was evidence that Continental Imports has a higher than average gross profit on sales of new vehicles, charging more for vehicles than its peers on an average per unit basis. There was evidence that Continental Imports increased its gross profit on

---

[4] Continental Imports contends that the "breakeven" analysis includes, among other things, projected operating revenues, expenses, and financial information sufficient to determine a dealership's "breakeven" point and its likelihood of being profitable.

12

finance, insurance, and service contract products sold with new vehicles. The ALJs considered evidence that sufficient lost opportunity exists in the Austin market to support a new dealership without causing harm to Continental Imports, specifically that the geographic area for the new dealership is an underrepresented area for the brand, it has recent and projected population growth, and includes a large distribution of higher-income households. The ALJs also considered evidence that commercial and residential development is considerable and the location is convenient for customers. The ALJs found that Continental Imports did not demonstrate why it was necessary for Swickard Austin to submit a business plan or evidence of its "break even" point for profitability to establish that adding a new dealership will promote competition in the marketplace. The ALJs relied on evidence that Continental Imports is a highly profitable dealership that is in a good position to compete in the market to conclude that opening a new dealership would promote healthy competition in the marketplace.

### 4. Harm to Continental Imports

Continental Imports asserted that, pursuant to the Board's previous order in *Landmark Chevrolet Corp. v. General Motors Corp., Chevrolet Motors Division*, No. 02-0002LIC (Tex. DMV Dec. 9, 2004), an existing dealer is not required to sacrifice its profits to the proposed dealership if the amount of realistically achievable lost opportunity in the market is fewer than the number of new units the proposed dealership must sell in order to break even. Continental Imports's experts testified that there is insufficient realistically achievable lost opportunity in the Austin market to support a third dealership without reducing Continental Imports's profits. MB USA also presented evidence of untapped market opportunity, and the ALJs found this evidence more persuasive. The ALJs also noted that, while in the *Landmark*

13

case the Board found that there was insufficient evidence of untapped opportunity in the market to support an additional dealership, the Board stated that it is acceptable for an existing dealership to experience some lost profits when a new dealership is established.

As it did with the adequate representation factor, Continental Imports argued that evidence of Swickard Austin's "breakeven" number is critical to establish that Continental Imports would not be harmed by the establishment of a new dealership. Continental Imports asserted that the market for entry-level luxury vehicles is insufficient to support the new dealership because there were only 114 entry-level retail registrations lost to competitors in the Austin AOR, 37 of which were in the proposed South Austin AOI as of May 2019. Continental Imports argued that there was no evidence or explanation of how this lost sales opportunity could support the 916 vehicle sales MB USA had assigned to the proposed dealership. MB USA countered that the 916 vehicle planned sales volume was an estimate for the year 2023, not for 2019, which it stated was not an unreasonable estimate given the projected growth in the Austin area. The ALJs found that Continental Imports failed to demonstrate that Swickard Austin's "breakeven number" was necessary to show that Continental Imports will not be harmed in the face of persuasive evidence that sufficient opportunity exists in the market to sustain the proposed dealership.

Continental Imports provided anecdotal evidence that when Mercedes-Benz Georgetown relocated from Temple to Georgetown in 2004, Continental Imports's new vehicle sales dropped 35 percent within 90 days, its total profits dropped 45 percent (from $2 million to $1 million) and it took four to five years for its profits to return to 2004 levels. Continental Imports also testified that it believed it would lose service business to a new dealership. The ALJs found this testimony to be unpersuasive as to whether Continental Imports would be

14

harmed, noting that Mercedes-Benz Georgetown's relocation occurred 16 years earlier and the Austin economy and luxury vehicle market had changed significantly since then.

Both Continental Imports and MB USA offered expert testimony regarding lost sales opportunity in the existing market. Continental Imports argued that Mercedes-Benz USA's expert's methodology was flawed because it unrealistically assumed that every ZIP code in the Austin AOR should be at 100 percent registration effectiveness when, in fact, there are significant demographic differences among ZIP codes. Continental Imports also faulted the expert testimony on the ground that the gross-loss number used was inflated and unreliable because there was no determination of the normal or expected level of gross loss present in the Austin AOR or the amount of gross loss that would remain if the proposed dealership were established. Finally, Continental Imports challenged this expert testimony because it made no determination of the normal level of expected in-sell in the Austin AOR or the amount of in-sell that would remain if the proposed dealership were established.

The ALJs detailed the testimony of each of the parties' experts and explained that it found Continental Imports's projections and analyses unpersuasive. The ALJs explained that the methodologies that Continental Imports's experts used have not been accepted by the automotive industry or the Board, and their chosen methodologies were not improvements on the accepted methodologies used by MB USA's experts.

The ALJs also detailed the competing testimony about the lost service opportunity in the market presented by the parties' experts as well as evidence that Continental Imports's profitability is not dependent on new vehicle sales but rather on fixed operations such as service, parts, and body shop departments. The ALJs stated that it was unpersuaded by Continental Imports's arguments regarding potential losses, finding that they were unsupported by the record

15

or relied on expert testimony and reports that the ALJs did not find to be persuasive. Based on the evidence presented, including forensic analysis that showed Continental Imports would compete effectively with a new dealership given its diversification and profitability, the ALJs concluded that Continental Imports would suffer little or no harm from the addition of a new sales point in South Austin.

### 5. Public Interest

Continental Imports, relying on PFDs in previous dealership application hearings, asserted that the public interest factor could not be satisfied without reliable proof of the proposed dealership's estimated revenues and expenses because an unprofitable dealership could not be in the public interest. Continental Imports also asserted that, without an analysis of the number of new vehicles the proposed dealership must sell to break even, harm to the protesting dealer cannot be assessed for purposes of determining the public interest. Based on its understanding that Swickard Austin's business model included selling entry-level vehicles to younger customers, Continental Imports argued that Swickard Austin could only be successful if it took sales from Continental Imports because there were not otherwise sufficient entry-level sales available in the market. MB USA countered that the previous PFDs addressed the profitability of the existing dealership, rather than the proposed dealership, and found that unprofitable existing dealerships are not in the public interest. As such, MB USA argued that the previous PFD did not stand for the proposition that evidence of how many vehicles the new dealership would need to sell to be profitable was required to demonstrate that a new dealership would be in the public interest. The ALJs agreed with MB USA's reading of the previous PFD, finding that it did not discuss requiring proof of the proposed dealership's estimated revenues

16

and expenses but, rather, discussed the profitability of existing dealerships. The ALJs also found that Continental Imports's assertion that a "large volume" of entry-level sales was not realistically available in the market was vague and unsupported by the evidence in the record. Instead, the ALJs found that the evidence demonstrated sufficient lost opportunity, including of entry-level sales, were available to support the proposed dealership.

The ALJs found that the public interest would benefit from increased competition in the marketplace, the convenience of having an additional dealership, job creation from the construction and operation of the proposed dealership, and the new tax base created by additional vehicle and parts sales. The ALJs detailed the evidence presented that construction of the dealership would create 141 full-time jobs with a combined direct and indirect impact of $9.4 million in labor income and a $12.9 million addition to the Austin gross regional product. There was evidence that dealership operations would support 376 full-time equivalent positions for the dealership and indirect businesses, with a total earned income of $21.6 million per year. The ALJs reiterated their finding that there was evidence that the Austin market is sufficient to support a new Mercedes-Benz dealership without taking sales from the existing dealers. Based on the evidence presented, the ALJs concluded that establishing a new Mercedes-Benz dealership in South Austin was in the public interest.

### 6. Harm to Swickard Austin

The ALJs considered evidence as to whether denial of the application to establish a new dealership would cause harm to Swickard Austin. There was evidence that Swickard Austin borrowed money to acquire the proposed site and paid fees for attorneys and architects. Continental Imports, however, argued that Swickard Austin would be able to recoup all costs and

17

fees by selling the proposed location. The ALJs noted that Swickard Austin and MB USA had the burden of demonstrating harm to Swickard Austin. Although there was evidence that Swickard Austin might lose some unspecified portion of the total purchase price of the property if the application were denied, it was also possible that Swickard Austin would recoup all funds expended or even make a profit. The ALJs found that the evidence presented was too speculative to establish meaningful harm to Swickard Austin if the application were denied. The ALJs concluded that the evidence failed to establish harm to Swickard Austin.

### 7. *Projections of Economic Conditions, Financial Expectations, and the Market*

The ALJs considered evidence addressing "reasonable foreseeable projections of economic conditions, financial expectations, and the market for new motor vehicles in the relevant market area." There was evidence that Austin has grown significantly over the last decade and its overall population is projected to continue growing in the future. Austin is expected to continue seeing increases in higher incomes per household, growth in overall income in the economy, higher employment and lower unemployment, and strong growth in income and wages. There was evidence that Austin will continue to grow despite possible recessions and its economy will recover more quickly than other economies if a recession does occur. There was evidence that Austin has seen gains in luxury vehicle sales since 2014. Despite agreeing that the economic conditions and market for new vehicles in the Austin market are positive, Continental Imports disputed that a new dealership would be profitable. It also asserted that sales of the Mercedes-Benz brand have been declining nationally and in Texas.

The ALJs noted that there was extensive evidence regarding the current and projected economic growth and diversification and population growth in the Austin market with

18

significant growth in higher-income households.  It also cited evidence that luxury vehicle sales in Austin have risen steadily since 2014 and the fact that the parties do not dispute the economic strength of the Austin market.  The ALJs concluded that current and reasonably foreseeable projections of economic conditions, financial expectations, and the market for new motor vehicles favored the establishment of a new Mercedes-Benz dealership in South Austin.

After hearing evidence on each of the seven statutory good-cause factors, the Board determined that five of the factors—adequacy of representation; desirability of a competitive market; harm to Continental Imports; the public interest; and projections of economic conditions, financial expectations, and the market—weighed in favor of establishing a new dealership.  The Board determined that one factor—Continental Imports's compliance with its franchise agreement—weighed against establishing a new dealership and one factor—harm to Swickard Austin if application were denied—weighed neither for or against establishing a new dealership.  Based on its evaluation of the statutory factors, the Board concluded that good cause existed for the establishment of the proposed Mercedes-Benz dealership in South Austin and that Swickard Austin's application should be granted.

Continental Imports challenges the Board's order in several respects.  First, Continental Imports asserts that because there was no evidence of what Swickard Austin's "breakeven" point would be or how many cars it would have to sell to be profitable, the Board could not have reasonably assessed five of the statutory factors it was required to consider in making its good cause determination.  Continental Imports maintains that agency precedent requires that an applicant for a new dealership provide evidence of the proposed dealership's building plans, projected operating revenues, expenses, or other financial information needed to determine the new dealerships "breakeven" point and its likelihood of profitability and without

19

that evidence, the Board could not "allow a dealership to be licensed in an extremely competitive or hyper-competitive market." We do not agree that an applicant is required to present the Board with evidence of any specific type for the Board to reasonably assess the statutory factors. Rather, the Board makes decisions based on specific proposals at specific geographic points in specific markets at specific times and we must uphold those decisions if there is substantial evidence to support them. *See Grubbs Nissan Mid-Cities, Ltd.*, 2007 WL 1518115, at \*6. This Court has previously held that "the standard employed by the [Board] varies based on the facts and circumstances in each case." *See Austin Chevrolet*, 212 S.W.3d at 435. The Court also noted that the Board has not committed itself to the use of a single standard for evaluating any of the statutory factors and has used a variety of standards in its decisions. *Id.* Here, the Board explained that it did not need evidence of Swickard Austin's "breakeven" point to evaluate any of the statutory factors in light of extensive evidence presented on each of the factors. For example, with regard to the adequacy of representation factor, the ALJs detailed the evidence they relied on and rejected Continental Imports's assertion that it needed to have Swickard Austin's business plans and projections to establish that adding a new dealership would promote competition in the marketplace and serve the public interest. The statute neither limits nor prescribes the type of evidence that the Board considers in making its good cause determination. There was substantial evidence supporting each of the Board's determinations on the seven statutory factors notwithstanding the lack of evidence of Swickard Austin's "breakeven" point. The lack of evidence of Swickard Austin's "breakeven" point did not render the Board's order arbitrary or capricious. *See Public Util. Comm'n v. Texas Indus. Energy Consumers*, 620 S.W.3d 418, 427-30 (Tex. 2021) (rejecting argument that Commission had, in previous cases, "set a standard" that required certain type of evidence to demonstrate prudence of

20

utility's decision to complete construction of power plant and upholding Board's determination despite absence of such evidence because Board applied appropriate prudence standard for assessing utility's decision to complete construction and substantial evidence supported Commission's conclusions).  The Texas Supreme Court explained that whether an agency's decision is arbitrary or capricious looks to the Board's process.  A Board decision is arbitrary if it:  "(1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result."  *City of El Paso v. Public Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994).  Here the record contains extensive evidence on each of the statutory factors, the ALJs' findings of fact and conclusions of law reveal that it carefully considered each factor, and the Board concluded that five of the seven weighed in favor of establishing a new dealership.  The Board's order was not arbitrary or capricious simply because the Board did not require Swickard Austin to present evidence of its "breakeven" point.  There is a reasonable basis in the record for the Board's conclusions on each of the statutory factors.

Continental Imports also complains that the Board's order was arbitrary and capricious and not supported by substantial evidence because, in its view, the expert testimony and evidence presented by MB USA and Swickard Austin on the issue of lost sales and service opportunity addressed only hypothetical, and not realistic, service and sales available for capture. The ALJs detailed the competing expert's testimony on both lost sales and lost service opportunities available in the market, ultimately accepting the expert testimony provided by Mercedes Benz USA and Swickard Austin.  During the hearing process, the Board is free to determine that "[one] party had the more convincing experts and appropriate methodology to evaluate the statutory good cause factors." *Austin Chevrolet*, 212 S.W.3d at 437-38.  The Board

21

fully explained its decisions regarding lost sales and service opportunities available in the market and did not act in an arbitrary or capricious manner. Rather, the Board determined that, based on the evidence presented during the hearing process, Swickard Austin and MB USA had the more convincing experts and more appropriate methodology to evaluate this statutory factor for the Austin market for the time in question.

Continental Imports also asserts that it relied on agency precedent requiring proof of an applicant's "breakeven" point and, consequently, was harmed when the Board deviated from this precedent by not requiring Swickard Austin to present that evidence in support of its application. As has already been discussed, the Board's decision was based on its evaluation of the seven statutory factors and the PFD contains extensive fact findings related to those factors that are supported by substantial evidence. "An agency is not bound to follow its decisions in contested cases in the same way that a court is bound by precedent." *Flores v. Employees Retirement Sys. of Tex.*, 74 S.W.3d 532, 533-34 (Tex. App.—Austin 2003, pet. denied). Moreover, while the Board may have considered or relied on evidence of a proposed dealership's "breakeven" point in other cases, there is no Board rule or policy that requires an applicant to present that type of evidence in order for the Board to assess the statutory factors. The statute simply requires that the Board consider all the statutory criteria to make its good cause finding. "[A]n agency's final order must reflect that the agency considered the statutory factors, and its underlying findings must be stated in such a way that a reviewing court can reasonably evaluate whether the underlying findings support the statutory factors." *Grubbs Nissan Mid-Cities, Ltd.* 2007 WL 1518115, at *9. We may not substitute our judgment for that of the Board on questions committed to the Board's discretion. *See Austin Chevrolet*, 212 S.W.3d at 431. So long as the evidence is such that reasonable minds could have reached the conclusion reached

22

by the agency, a reviewing court must uphold the agency's final order. *See Charter Med.-Dall.*, 665 S.W.2d at 452-53. Having reviewed the record, we conclude that the evidence demonstrates a reasonable basis for the Board's determination that there was good cause for the establishment of a new Mercedes-Benz dealership in South Austin despite not having before it evidence of the new dealership's "breakeven" point.

Finally, Continental Imports asserts that the Board's order does not comply with Texas Occupations Code section 2301.711(b)(3), which provides that the Board's order must "give the reasons for the particular actions taken." *See* Tex. Occ. Code § 2301.711(b)(3). Continental Imports argues that because the Board's order adopts the ALJs' findings of fact and conclusions of law, but does not state that it is adopting the PFD as well, that the Board has failed to "give the reasons" for denying its protest and granting Swickard Austin's application to establish a new dealership. The Board's order states that "The Board enters this Final Order having considered the administrative record." The administrative record includes all the evidence presented to the ALJs during the hearing, as well as the ALJs' PFD—both the findings of fact and conclusions of law and the 78 pages of analysis of the evidence presented at the hearing. The reason for concluding that good cause existed for establishing a new dealership is plainly the Board's determinations regarding each of the statutory factors which are set out in the conclusions of law. Each of these conclusions of law is supported by extensive fact findings explaining how the Board reached a determination on which statutory factors weighed in favor of and which weighed against establishing a new dealership. The mere fact that the Board's order does not recite that it was adopting the PFD, in addition to the 223 findings of fact and the sixteen conclusions of law, does not obscure the reason for the Board's decision. The Board's order complies with the statute's requirement that the Board give the reasons that it denied

23

Continental Imports's protest and granted Swickard Austin's application to establish a new Mercedes-Benz dealership in South Austin.

## CONCLUSION

Because we conclude that the Board did not act in an arbitrary and capricious manner or abuse its discretion and that the Board's order is supported by substantial evidence and not affected by other error of law, we affirm the Board's final order.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   January 6, 2023

24